**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-cv-60653-BLOOM/Valle**

G. CLIFFORD ABROMATS,
individually and as Trustee of the Gloria J.
Abromats Revocable Trust Agreement
u/t/d September 15, 2005, as amended,

    Plaintiff/Counter-Defendant,

v.

PHILIP ABROMATS,
individually and as qualified beneficiary
Gloria J. Abromats Revocable Trust Agreement
u/t/d September 15, 2005, as amended,

    Defendant/Counter-Plaintiff.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant/Counter-Plaintiff Philip Abromats' ("Philip") Motion to Dismiss, ECF No. [42], (the "Motion"). Philip moves to dismiss the Complaint, ECF No. [1], filed by Plaintiff/Counter-Defendant G. Clifford Abromats ("Clifford"). The Court has considered the Motion, the attached exhibits, the record in this case as appropriate, and is otherwise fully advised in the premises. For the reasons that follow, the Motion is denied.

**I.   BACKGROUND**

Although these proceedings began only a few months ago, the case has acquired a significant and litigious procedural history. On March 27, 2015, Philip and Clifford's mother, Gloria Abromats, passed away. *See* ECF No. [1], Exh. A at 5-8, ¶ 12 ("Complaint"). Ms. Abromats executed an *inter vivos* trust on September 15, 2005 (the "Trust" or "Gloria Abromats Trust"), to which Clifford serves as Trustee and is a beneficiary. *See id.* ¶ 5. On or about

September 30, 2011, Ms. Abromats purportedly executed amendments to the Trust (the "September Amendments"), amendments Clifford claims Philip procured through undue influence. *See id.* ¶¶ 10, 11. Clifford originally filed the instant lawsuit in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, seeking an approval of an Accounting of the Gloria Abromats Trust and invalidation of the September Amendments. *See id.* ¶ 1. Simultaneously, Clifford filed another suit in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, seeking an approval of an Accounting of the George Abromats Trust. *See* ECF No. [52] at 2. Philip removed both the Gloria and George Abromats Trust actions to federal court, where they were filed on the dockets of this Court and the Honorable William J. Zloch, respectively.

Prior to Clifford's filings in state court, however, Philip filed suit in the United States District Court for the Western District of New York, in the case *Philip Abromats v. George Clifford Abromats, et al*., Case No. 15-cv-00904-RJA-JJM (the "W.D.N.Y. Case"), bringing claims against Clifford similar to those that Clifford brought against Philip in state court. After a thorough review, the Honorable Richard J. Arcara ordered the W.D.N.Y. Case transferred to this Court, but upon a motion filed by Philip, stayed that Order pending reconsideration. *See* ECF Nos. [47]–[49]. Recognizing that *three* federal cases existed adjudicating the same or similar claims, this Court stayed the Gloria Abromats Trust matter on May 25, 2016 to await Judge Arcara's decision on reconsideration. *See* ECF No. [47]. Judge Arcara issued his decision on June 13, 2016, and the W.D.N.Y. Case was transferred to the docket of this Court on July 12, 2016, Case No. 16-cv-61649. Pursuant to an administrative order, the George Abromats Trust action was transferred to this Court's docket four days prior, Case No. 16-cv-60654. In the now reopened trifecta of proceedings, this Court addressed the procedural posture of each case,

granting Clifford's motion to remand the George Abromats Trust action to state court, denying Clifford's motion for the same regarding the Gloria Abromats Trust action, consolidating the W.D.N.Y. Case with the Gloria Abromats Trust case, and closing the W.D.N.Y. Case previously filed at Case No. 16-cv-61649. *See* ECF No. [52] at 8.

However, issues remain. Prior to the issuance of the above Order, ECF No. [52], Philip filed a Motion to Dismiss the Gloria Abromats Trust case for lack of jurisdiction. *See* ECF No. [42]. Clifford and Philip filed a Response and Reply to that Motion subsequent to the Court consolidating the action with the W.D.N.Y. Case. *See* ECF Nos. [62], [69]. Accordingly, the Motion, while procedurally unique, is now ripe for adjudication.

II.     **LEGAL STANDARD**

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

"In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing *Cable/Home Commc'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)). "Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1338 (S.D. Fla. 2014), *aff'd*, *sub nom*, 789 F.3d 1201 (11th Cir. 2015). "If the defendant provides sufficient evidence, 'the burden shifts to

4

the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *MPS Entm't, LLC v. Headrush Apparel, Inc.*, 2013 WL 5446543, at *2 (S.D. Fla. Sept. 30, 2013) (quoting *Thomas v. Brown*, 504 Fed. App'x 845, 847 (11th Cir. 2013)). "When there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version . . . particularly when the jurisdictional questions are apparently intertwined with the merits of the case." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (internal quotations and alterations omitted). Through this lens, the Court addresses the instant Motion.

### III.     DISCUSSION

Clifford has the initial burden "of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see Carmouche*, 36 F. Supp. 3d at 1338. "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Accordingly, this Court has jurisdiction over a Defendant if (1) jurisdiction is authorized by Florida's "long-arm" statute; and (2) the exercise of jurisdiction over the defendant does not violate the Fourteenth Amendment's Due Process Clause. *See Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *High Tech Pet Products, Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, 2015 WL 926048, at *2 (M.D. Fla. Feb. 12, 2015), *report and recommendation adopted,* 2015 WL 926023 (M.D. Fla. Mar. 4, 2015). However, "[t]he mere proof of any one of the several circumstances enumerated in [Florida's long-arm statute] as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts." *Venetian Salami Co. v. Parthenais*,

554 So. 2d 499, 502 (Fla. 1989) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945)).  Florida's general long-arm statute is listed at Fla. Stat. Ann. § 48.193(1)(a), while its specialized long-arm statute related to trusts is found at Fla. Stat. Ann. § 736.0202, entitled "Jurisdiction over trustee and beneficiary."

In the Complaint, Clifford brings claims, individually and as Trustee of the Gloria J. Abromats Revocable Trust Agreement, against Philip.  Clifford alleges that the "situs" of the Gloria Abromats Trust "is Broward County, Florida," that "[t]he Court has jurisdiction over the parties pursuant to Fla. Stat. Ann. § 736.0202, and [that] venue is proper in Broward County, Florida, pursuant to Fla. Stat. Ann. § 736.0204."  Complaint ¶¶ 3-4.  Clifford alleges that Philip is a resident of Wyoming and a qualified beneficiary of the Trust who, on September 30, 2011, executed certain amendments to the Trust that Clifford claims Philip procured through undue influence.  *See id.* ¶¶ 6, 10, 22.  Clifford also seeks an approval of an Accounting pursuant to Fla. Stat. Ann. § 736.0201.  *See id.* ¶¶ 23-25.  Clifford, with his Complaint, has included a copy of the Trust, January 2011 amendments to the Trust, the September Amendments, and the proposed Accounting.  *See* ECF No. [1], Exh. A, at 9-59.

The Court finds that as plead, Clifford has met his initial burden to allege facts sufficient "to make out a *prima facie* case of jurisdiction."  *United Techs. Corp.*, 556 F.3d at 1274.  Philip concedes (and in fact, urges) that this Court has diversity jurisdiction over these proceedings pursuant to 28 U.S.C. § 1332, and the Complaint alleges that the Court has jurisdiction pursuant to Florida's long-arm statute related to trusts, Fla. Stat. Ann. § 736.0202.  Clifford has plead sufficient facts to indicate that Philip is a qualified beneficiary of the Trust, and that his claims fall within the ambit of Fla. Stat. Ann. § 736.0202.  In reaching this conclusion, the Court has considered the documents referenced in and attached to Clifford's Complaint, including the Trust

and proposed Accounting, along with the information contained therein. *See Wilchombe*, 555 F.3d at 959. As such, the burden shifts to Philip to "challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche*, 36 F. Supp. 3d at 1338. Philip claims that the Court lacks jurisdiction under both the *in rem* and *in personam* provisions of Fla. Sta. Ann. § 736.0202. In Response, Clifford claims that in addition to exercising jurisdiction over Philip under Fla. Stat. Ann. § 736.0202, the Court has personal jurisdiction over Philip pursuant to Fla. Stat. Ann. § 48.193(1)(a) on account of Philip's allegedly tortious conduct committed in Florida. *See* ECF No. [62] at 4. The Court first addresses jurisdiction pursuant to Fla. Sta. Ann. § 736.0202.

A.  **The Court Has Jurisdiction Under The *In Rem* Provision of Fla. Sta. Ann. § 736.0202**

Section 736.0202(1) of the Florida Statutes provides:

> **(1) In rem jurisdiction.**–Any beneficiary of a trust having its principal place of administration in this state is subject to the jurisdiction of the courts of this state to the extent of the beneficiary's interest in the trust.

Philip concedes that George and Gloria Abromats lived in Broward County from 1972 until their death, that Ms. Abromats executed her Trust in Broward County on September 15, 2005, and that the Trust contains Florida choice-of-law provisions. *See* ECF No. [42] at 10. Nevertheless, Philip contends that the Court lacks jurisdiction under the *in rem* prong of § 736.0202 because the "place of administration" of the Trust is Clifford's domicile in New York, not Florida. As an initial matter, Philip is correct that Ms. Abromats's domicile, even as the settlor, is not dispositive of the *in rem* jurisdiction determination. *See Hanson v. Denckla*, 357 U.S. 235, 249 (1958) ("The settlor-decedent's Florida domicile is equally unavailing as a basis for jurisdiction over the trust assets."). However, Philip's contention that a court loses *in rem* jurisdiction when a party "removes the *res* from the territorial jurisdiction of the court," *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1435 (11th

Cir. 1991), while true, does not describe the facts of this case. As both parties agree, the Gloria Abromats Trust consists of funds and securities in accounts at Sun Trust Bank and Wells Fargo branch offices located in Broward County, Florida. *See* ECF No. [62], Exh. 1 ¶ 26 ("Clifford Aff."); ECF No. [69] at 7 n.10. Philip has not shown that those funds, accounts, or any other part of the Trust *res* itself, have moved from Florida such that the jurisdictional analysis in *Four Parcels of Real Prop.* applies. The Court, therefore, addresses Philip's argument regarding the location of the Trust's administration.

Section 736.0108 of the Florida Statutes governs the determination of a trust's principal place of administration. *See Covenant Trust Co. v. Guardianship of Ihrman*, 45 So. 3d 499, 503 (Fla. Dist. Ct. App. 2010). Under that section, unless specified in a trust instrument, the principal place of administration is the "trustee's usual place of business where the records pertaining to the trust are kept or, if the trustee has no place of business, the trustee's residence." Fla. Stat. Ann. § 736.0108(2). In an affidavit included with his Motion, Philip states that Clifford is domiciled and owns a business in New York, but maintains "a condo in West Palm Beach as a second residence." ECF No. [42], Exh. A ¶¶ 16-17. This is the only evidence Philip provides to meet his burden to establish that the Trust is not administered in Florida, and it is plainly deficient. *See Carmouche*, 36 F. Supp. 3d at 1338; *see also State Farm Fire & Cas. Co. v. Lacks*, 840 F. Supp. 2d 1292, 1297 (M.D. Ala. 2012) ("arguments in briefs are not evidence.") (citing *Vega v. Invsco Group, Ltd.,* 432 Fed. App'x. 867, 872 (11th Cir. 2011)). Moreover, Clifford, in Response, has also filed an affidavit, in which he states

> For the entire duration of the time I served as trustee of the George Trust and Gloria Trust . . . I always maintained some sort of second residence in South Florida, so that I could . . . carry out my duties as trustee . . . I have continued to handle the affairs of the George Trust and the Gloria Trust, as my mother had handled them during her trusteeship – in Florida.

8

Clifford Aff. ¶¶ 20-21. Clifford further states that "[f]or the full duration of my trusteeship in both trusts, I have relied on the same Florida professionals that my mother and father had relied on for advice and assistance in handling the affairs of both trusts." *Id.* ¶ 23. These professionals, listed by name in the affidavit, "maintain records concerning both trusts" on Clifford's behalf, "in Florida." *Id.* ¶¶ 24-25. Clifford concedes that while he has kept copies of bills and brokerage statements related to the Trust in his home in New York, the "most significant" Trust records are contained at his home in Florida and within the offices of the Florida professionals he relies upon. *Id.* ¶¶ 27-28. Clifford's statements in his affidavit are buttressed by the fact that under Florida law, a trustee must prescribe notice before transferring a trust's place of administration to a jurisdiction outside of Florida, which Clifford has never done. *See* Fla. Stat. Ann. § 736.108(6)-(7). Therefore, while the Court finds that Philip has failed to proffer "sufficient evidence" to shift the burden to Clifford to establish the place of the Trust's administration, the Court additionally finds that Clifford has established, through his own pleadings and affidavit in Response, that this Court has *in rem* jurisdiction over the dispute.[1] *See MPS Entm't, LLC v.*, 2013 WL 5446543, at *2.

     **B.**    **The Court Has Personal Jurisdiction Over Philip Pursuant To Fla. Sta. Ann. § 736.0202(2)**

Although the Court finds the *in rem* component of Sta. Ann. § 736.0202 satisfied, the jurisdictional analysis is not at an end. "[I]n order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing. The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard

---

[1] To the extent that the record reflects that Clifford engaged in Trust-related activities in New York, the Court finds such activities insufficiently related to New York. *See Hanson*, 357 U.S. at 252 (finding "bits of trust administration" having occurred in Florida insufficient to establish Florida's *in rem* jurisdiction).

elucidated in *International Shoe* [*Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945)]." *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977) (internal citations omitted); *accord Rush v. Savchuk*, 444 U.S. 320, 327-28 (1980). As previously stated, to resolve personal jurisdiction, courts consider two questions: "(1) whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *Mutual Serv. Ins. Co.*, 358 F.3d at 1319). The Court, therefore, returns to Florida's specialty long-arm statute related to trusts.

  1. *Florida's long-arm statute*

Section 736.0202(2) of the Florida Statute provides that

> (a) Any trustee, trust beneficiary, or other person, whether or not a citizen or resident of this state, who personally or through an agent does any of the following acts related to a trust, submits to the jurisdiction of the courts of this state involving that trust:
>
>  1. Accepts trusteeship of a trust having its principal place of administration in this state at the time of acceptance.
>
>  2. Moves the principal place of administration of a trust to this state.
>
>  3. Serves as trustee of a trust created by a settlor who was a resident of this state at the time of creation of the trust or serves as trustee of a trust having its principal place of administration in this state.
>
>  4. Accepts or exercises a delegation of powers or duties from the trustee of a trust having its principal place of administration in this state.
>
>  5. Commits a breach of trust in this state, or commits a breach of trust with respect to a trust having its principal place of administration in this state at the time of the breach.
>
>  6. Accepts compensation from a trust having its principal place of administration in this state.

       7. Performs any act or service for a trust having its principal place of administration in this state.

       8. Accepts a distribution from a trust having its principal place of administration in this state with respect to any matter involving the distribution.

  (b) A court of this state may exercise personal jurisdiction over a trustee, trust beneficiary, or other person, whether found within or outside the state, to the maximum extent permitted by the State Constitution or the Federal Constitution.

Clifford claims that subpart (a)(8) describes Philip's relationship to the Trust. Philip disagrees, arguing that the "principal place of administration" is not Florida, and that in any regard, while he "received potentially three types of money over the years . . . none of them qualify as 'distributions'" within the meaning of 736.0202(2)(a)(8). ECF No. [42] at 12.

    The Court quickly dispenses with Philip's first argument for the reasons explained in section III.A, *infra*. As to the potential distributions from the Gloria Trust, Philip concedes that he (and his wife) received "(1) maximum 'annual exclusion' gifts from 2007-2015, many in cash but some in the form of loan forgiveness . . . ; (2) loans payable to the trust, by promissory note or otherwise, and (3) possibly other gifts." *Id.* at 13. In the Motion, Philip claims that these "were not distributions in the legal sense, because they were made during the life of the settlor, Gloria Abromats and not as payments to a remainderman." *Id.* at 13 n.7. In Reply, however, Philip pivots, conceding that the "annual exclusion gifts" he received from the Trust "were distributions," but that because these gifts are not at issue in this case, they cannot serve to confer personal jurisdiction upon the Court. ECF No. [69] at 8. Philip is mistaken. Because he accepted distributions from the Florida-based Trust from 2007 to 2015, Philip has "submit[ted] to the jurisdiction of [this] court[ ] . . . involving that trust . . . with respect to any matter involving the distribution." Fla. Stat. Ann. 736.0202(2)(8). Clifford states that Philip's

11

"distributions are a subject of the . . . action," ECF No. [62] at 13, and Philip has failed to produce evidence or affidavit sufficient to meet his burden to establish that Clifford's claims for an Accounting and to cancel the September Amendments do not relate to "matter[s] involving the distributions" he received. Fla. Stat. Ann. 736.0202(2)(8); *see Carmouche*, 36 F. Supp. 3d at 1338. With Florida's long-arm statute satisfied, the Court analyzes whether the exercise of specific jurisdiction comports with federal due process requirements, and further elaborates on its findings regarding Philip's relationship to the Trust. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1350; *Fraser*, 594 F.3d at 846; *Mutual Serv. Ins. Co.*, 358 F.3d, at 1319.

       2.     *Constitutional due process requirements*

In cases of specific jurisdiction, the court applies a "three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 474-75 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413-14 (1984); *Int'l Shoe Co.,* 326 U.S. at 316; *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-21 (11th Cir. 2009); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630-31 (11th Cir. 1996)). Put another way, a "nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *International Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Recently in *Walden*, the Supreme Court

specifically addressed the "minimum contacts" requirement, holding that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State," and "must arise out of contacts that the defendant himself creates with the forum State." *Id.* at 1121-22 (internal quotations omitted). In the context of a tort-based cause of action prefaced on an exercise of jurisdiction under Fla. Stat. Ann § 48.193(1)(a), the Eleventh Circuit has held that the forum "contact must be a 'but-for' cause of the tort." *Fraser*, 594 F.3d at 850 (citing *Oldfield*, 558 F.3d at 1222-23). That section, however, does not contain the expansive jurisdictional provision contained at Fla. Stat. Ann. § 736.0202, allowing a court to "exercise personal jurisdiction over a trustee, trust beneficiary, or other person, whether found within or outside the state, *to the maximum extent* permitted by the State Constitution or the Federal Constitution." Fla. Stat. Ann. § 736.0202(b) (emphasis added). In this context, the Court finds that exercising jurisdiction over Philip comports with the Due Process Clause of the Fourteenth Amendment.

As the Court held previously, this case "does not seek a judgment against anyone but rather a judgment disposing of all questions concerning the rights of various parties or the status of the disputed validity of the Trust." ECF No. [52] at 7 (quoting *Florida First Nat. Bank of Jacksonville v. Bagley*, 508 F. Supp. 8, 11 (M.D. Fla. 1980)). Considering the instant cause of action, the Court first finds the "minimum contacts" requirement satisfied because the specific distributions Philip accepted sufficiently "relate to" the Trust, and his contacts with the forum. *See Walden*, 134 S. Ct. 1121-22. While "[n]either the Supreme Court nor the Eleventh Circuit has established a specific approach for district courts to follow when deciding whether a nonresident defendant's contacts are sufficiently related to the plaintiff's claims," any "inquiry must focus on the direct causal relationship between 'the defendant, the forum, and the

13

litigation.'" *Id.* at 1121 (quoting *Shaffer*, 433 U.S. at 204); *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1316-17 (N.D. Ga. 2014); *see Fraser*, 594 F.3d at 850. Clifford's Complaint seeks to declare null and void the September Amendments,[2] which reinstated Philip as a beneficiary entitled to Trust funds. *See* Complaint; *see also* ECF No. [1], Exh. A, at 33. The Complaint also seeks approval of an Accounting, which by its nature, encompasses the distributions Philip admits he received. As such, the Court finds that the distributions Philip accepted from the Trust establish the requisite minimum contacts, as they are sufficiently "related to" the instant cause of action and the forum. Furthermore, by accepting distributions from the Trust administered from Florida, with the assistance of Florida-based professionals, from funds based in Florida accounts, and with the understanding that Florida law governed, Philip unquestionably "purposefully availed [himself] of forum benefits" and made it such that he "could reasonably anticipate being haled into court" in Florida. *See Fraser*, 594 F.3d at 850.

As to the third prong – "fair play and substantial justice" – the Court finds this requirement met as well. At this stage, courts look to "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several states in furthering fundamental substantive social policies.'" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1274 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 477 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "Another factor considered by the courts to bear on reasonableness, is whether plaintiff has available an alternate forum." *Quikrete Companies, Inc. v. Nomix Corp.*, 705 F. Supp. 568, 573 (N.D. Ga. 1989), *aff'd*, 34 F.3d 1078

---

[2] The September Amendments were those that Ms. Abromats made with the input of Philip, apparently while Philip visited Florida for that very purpose.

(Fed. Cir. 1994) (citing *Lake v. Lake,* 817 F.2d 1416, 1422 (9th Cir. 1987)).  However, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment."  *Fraser*, 594 F.3d at 852 (citing *World–Wide Volkswagen,* 444 U.S. at 294).

First, the Court finds that the "interstate judicial system" has a significant interest in the resolution of these proceedings in this forum.  The parties have spent the last ten months arguing this case and related matters in *three* separate courts and before at least *four* individual judges, including the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, the Western District of New York, and *two* judges in the Southern District of Florida.  After Philip filed the instant Motion, Judge Arcara transferred the W.D.N.Y. Case to this Court, and in a very real sense, this Court is the end of the line.  Clifford clearly has an interest in obtaining relief in this Court, and in fact, is only here because Philip removed these proceedings from state court. After ten months, the Court believes that it is in the best position to efficiently and effectively resolve the disputes at issue.  Moreover, many of the professionals, evidentiary documents, and other discovery matters are present in this forum, making it convenient.  Counter-Defendant Baxter is domiciled in South Florida, as was Ms. Abromats at the time of the alleged "undue influence."  Finally, the Court finds that Florida, the forum state, has a strong interest in resolving this matter, as Ms. Abromats lived, settled the Trust, and passed away in Florida, Florida law governs the Trust, the Accounting occurred in Florida, and the Trust is administered from the forum.

The Court does not disregard Philip's concerns regarding the difficulties that a Florida litigation may entail. However, these concerns are no different from those of many out-of-state defendants forced to litigate in this forum, and if anything, Philip's demonstrated knowledge of factual and legal matters may serve to lessen the burden. Importantly, Philip's cause of action in the Western District of New York has also been transferred to this Court, consolidated with the instant action. Thus, while Philip argues that litigating in this forum is inconvenient, he also now seeks relief in this Court, to an extent, as a plaintiff. For all of these reasons, the Court finds constitutional due process requirements satisfied. As the Court finds jurisdiction sufficiently established, it need not address Clifford's alternative argument that the Court has jurisdiction under 48.193(a)(1)2, due to Philip's alleged tortious conduct in this forum.

## IV.    CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** that Philip's Motion to Dismiss, **ECF No. [42]**, is **DENIED**. The Court will deem the removed Complaint, ECF No. [1], Exh. A, as the operative Complaint in this matter, with Philip's Amended Answer and Counterclaims, ECF No. [37], serving as Philip's operative Answer and Counterclaims.[3]

**DONE AND ORDERED** in Miami, Florida, this 15th day of August, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[3] It appears that the parties do not object to this posture, for, as of the date of this Order, both Counter-Defendants have moved to dismiss Philip's Counterclaims, and Philip has filed a Response in opposition to one of the motions. *See* ECF Nos. [59], [63], [68].