# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-cv-60653-BLOOM/Valle

G. CLIFFORD ABROMATS,
individually and as Trustee of the Gloria J.
Abromats Revocable Trust Agreement
u/t/d September 15, 2005, as amended,

      Plaintiff/Counter-Defendant,

v.

PHILIP ABROMATS,
individually and as qualified beneficiary
Gloria J. Abromats Revocable Trust Agreement
u/t/d September 15, 2005, as amended,

      Defendant/Counter-Plaintiff.

_____/

## ORDER ON MOTIONS TO DISMISS COUNTERCLAIMS

**THIS CAUSE** is before the Court upon a Motion to Dismiss Amended Counterclaim filed by Counter Defendant Jack Baxter ("Baxter"), ECF No. [59] ("Baxter's Motion"), and a Motion for More Definite Statement and Motion to Dismiss filed by Plaintiff/Counter Defendant G. Clifford Abromats ("Clifford") and Counter Defendant Janice Worobec ("Worobec") (collectively, "Clifford" or "Clifford Defendants"), ECF No. [63] ("Motion" or "Clifford's Motion") (collectively, the "Motions"). All Counter Defendants move the Court to dismiss counterclaims brought by Defendant/Counter Plaintiff Philip Abromats ("Philip"). The Court has considered the Motions, the attached exhibits, the record in this case as appropriate, and is otherwise fully advised in the premises. For the reasons that follow, Baxter's Motion is granted, and Clifford's Motion is granted in part and denied in part.

## I.     BACKGROUND

The unique background of these proceedings is known to all parties, as extensively documented in this Court's prior Orders.  *See Abromats v. Abromats*, 2016 WL 4366480 (S.D. Fla. Aug. 16, 2016) (ECF No. [72]); *see also* ECF No. [52].  For purposes of the instant Motions, the record reflects that on May 13, 2016, Philip filed an Amended Answer to Clifford's Complaint, ECF No. [1] ("Complaint"), including affirmative defenses and 16 counterclaims spanning 433 paragraphs.  *See* ECF No. [37] ("Counterclaims").  Philip brings only one of his counterclaims, Count 14, against Baxter.  The remaining counterclaims are brought against Clifford and/or Worobec, counterclaims Clifford Defendants argue must be dismissed in their entirety.  *See* Motion.  Baxter and Clifford filed their Motions to Dismiss on July 19 and August 1, 2016, respectively.  *See* ECF Nos. [59] and [63].  Philip's Responses, and the Movants' Replies, timely followed.  *See* ECF Nos. [68], [70], [75], [87].

## II.     LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  These elements

are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III.    DISCUSSION

Counter Defendants argue that Philip's Counterclaims must be dismissed for a multitude of reasons.  The Court will first address the arguments applicable to the Counterclaims in their entirety, and then will address Baxter and Clifford Defendants' arguments for dismissing Count

14.   In subsections III.D through III.I, the Court adjudicates Clifford Defendants' remaining arguments.

### A.        Shotgun Pleading

Both Baxter and Clifford Defendants argue that Philip's Counterclaims constitutes an impermissible "shotgun pleading."   Indeed, Philip's Counterclaims do consist of "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). However, the Court finds that "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."   *Id.* at 1324.   The Motions indicate that all Counterclaim Defendants comprehend Philip's legal claims and recognize the specific factual allegations he pleads in support, and to the extent that Clifford Defendants may have been burdened in preparing their Motion, a review of the substantive arguments contained therein indicate that any "burden of understanding" has been overcome.   Importantly, Philip supports each count of his Counterclaims with specific factual allegations, identifies the particular Defendants liable for each count, and lists his legal theories in 16 separate sections.   The Court, therefore, believes it is likely for Defendants "to know which allegations of fact are intended to support which claims for relief."  *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (internal alteration omitted).   As in *Weiland*, the Court does not "retreat[ ] from this circuit's criticism of shotgun pleadings." 792 F.3d at 1326.   Rather, the Court finds that under the specific circumstances of this case, the Motions will be adjudicated on the merits.

**B.      Clifford's Motion for More Definite Statement – Counts 2, 3, 4, 5, 9, 10, 12, and 15**

Clifford Defendants move for a more definite statement of the above counts due to the inclusion of claims relevant to the George Abromats Trust ("George Trust"), with claims relevant to the Gloria Abromats Trust ("Gloria Trust" or "Trust") (collectively, the "Trusts"). *See* Motion at 2.  Rule 10(b) states that

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence–and each defense other than a denial–must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).  A defendant may "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  "The motion must . . . point out the defects complained of and the details desired."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 983 n.70 (11th Cir. 2008) (quoting Fed. R. Civ. P. 12(e)) (alterations in original).

Clifford claims that the offending counts improperly "comingle claims founded on duties that [Clifford] allegedly breached under the George Trust . . . with claims founded on duties that [Clifford] breached under the Gloria Trust."  Motion at 5.  Each one of the referenced counts, however, alleges a single legal theory, pleading factual allegations based in both Trusts.  Therefore, unlike *Anderson*, *infra*, and *Green v. C.B. Fleet Holding Co. Inc.*, 2008 WL 113668, at *2 (S.D. Fla. Jan. 8, 2008) relied upon by Clifford, the Counterclaims properly allege a single legal theory in each count, and the Court does not find a more definite statement required.  *See Anderson*, 77 F.3d at 366 (finding a more definite statement where "each count also charges that the defendant or defendants violated the First, Fourth, and Thirteenth Amendments to the Constitution of the United States, Chapters 120 and 240 of the Florida Statutes, Chapter 28 of the

Florida Administrative Code, and the Florida law of contracts."); *Green*, 2008 WL 113668, at *1 ("In Count III of the Amended Complaint, Plaintiff . . . attempts to assert two alternative claims-one for fraud and one for negligent misrepresentation.").   Moreover, Clifford serves as Trustee of both Trusts, and many of Philip's claims involve related allegations of comingling and raiding of Trust assets.   Given the nature of the claims he brings, the Court does not find Philip's pleading so "vague or ambiguous" that Clifford cannot reasonably prepare a response.   Fed. R. Civ. P. 12(e).   To the contrary, Clifford has submitted extensive legal argument challenging every legal claim Philip brings – commingling allegations notwithstanding.   Accordingly, Clifford Defendants' Motion for More Definite Statement is denied.

### C.   Statute of Limitations – Counts 1, 13, and 14

Within Count 14, Philip brings a civil conspiracy claim against Baxter, Clifford, and Worobec.   Essentially, Philip alleges that all three Counterclaim Defendants conspired with one another to deprive Philip of his one half-share of the Gloria Trust.   *See* Counterclaims ¶¶ 358-61. Philip makes his accusations "on information and belief," and provides little specific factual allegations in support, citing instead to his averments in the preceding 356 paragraphs.   *See id.* ¶¶ 357-67.   Baxter claims that Count 14 constitutes a shotgun pleading and, additionally, fails to state a claim.   Baxter's Motion.   Clifford Defendants further argue that Count 14 must be dismissed because (1) Baxter's inclusion as a Defendant destroys diversity of parties; and (2) Philip has not plead a requisite tort to support a claim for civil conspiracy, as the torts he pleads in Counts 1 and 13 are barred by the relevant statute of limitations.   Motion at 4, 11.

An action for civil conspiracy requires that a claimant plead an underlying tort or civil wrong, serving as the conspiracy's object.   *See Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997) ("an actionable conspiracy requires an actionable underlying tort or

wrong."); *see also Wright v. Yurko*, 446 So. 2d 1162, 1164-65 (Fla. 5th DCA 1984). Philip concedes that only two of his claims – Count 1 for undue influence and Count 13 for tortious interference with inheritance – serve as potential underlying torts to support his civil conspiracy cause of action. *See* ECF No. [75] at 14. Philip does not contest that both claims are technically barred by the four-year statute of limitations found at Fla. Stat. § 95.11(3)(j) and (o). *See id*. at 5-7, 14. Philip argues, however, that Counts 1 and 13 constitute compulsory counterclaims, and that "[i]n this situation, the doctrine of recoupment negates the statute of limitations." *Id.* at 6. The Court disagrees.

"[A]s a general matter a defendant's right to plead 'recoupment,' a 'defense arising out of some feature of the transaction upon which the plaintiff's action is grounded,' survives the expiration of the period provided by a statute of limitation that would otherwise bar the recoupment claim as an independent cause of action." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 415 (1998) (quoting *Rothensies v. Electric Storage Battery Co*., 329 U.S. 296, 299 (1946) (internal quotations omitted)); *see Pennsylvania R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1941).[1] "[T]he Eleventh Circuit has applied a three-part test for determining if a claim qualifies as one in recoupment: (1) whether the counterclaim arose out of the 'same transaction' as the original claim; (2) whether it was asserted as a defense; and (3) whether the original claim was itself timely." *Crawford v. LVNV Funding, LLC*, 2016 WL 4249498, at *4 (M.D. Ala. Aug. 9, 2016) (citing *In re Smith*, 737 F.2d 1549, 1553 (11th Cir. 1984); *see Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967) (restricting "matters in recoupment" to those matters "arising out of the same transaction or occurrence"). "In analyzing the first part of the recoupment test,

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981.

courts have applied the logical relationship test." *Crawford, LLC*, 2016 WL 4249498, at *4; *see Potts v. B & R, LLC*, 2014 WL 1612364, at *2 (M.D. Fla. Apr. 21, 2014) ("In determining whether claims arise from the same transaction or occurrence, . . . courts in the Eleventh Circuit apply the 'logical relationship' test." (citing *Smith v. Trans–Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) and *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985))). "Under this test, there is a logical relationship when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'" *Republic Health Corp.*, 755 F.2d at 1455 (quoting *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)).

In this case, Clifford brings a narrow cause of action against Philip "to set aside and declare null and void the September 30, 2011 Amendments" to the Gloria Trust (the "September Amendments"), on account of Philip's alleged undue influence and Ms. Abromats's alleged lack of capacity. *See* Complaint, Counts 1 and 2. Clifford also seeks approval of an accounting of the Trust. *See id.*, Count 3. Counts 1 and 13 of Philip's Counterclaims make similar claims against Clifford, alleging that *Clifford* procured the "January 2011 purported disinheriting amendment" – disinheriting Philip from the Trust (the "January Amendments") – through undue influence, resulting in tortious interference. Counterclaims ¶¶ 226, 354. To summarize: the brothers plead that Clifford allegedly procured wrongful amendments in January of 2011, while Philip allegedly procured wrongful amendments in September of 2011. As Philip's claims are based on actions that allegedly occurred nine-months *prior* to the actions underlying Clifford's claims, the Court concludes that the claims do not arise out of the same "transaction or occurrence." Simply put, Clifford's procurement of the January Amendments through tortious

conduct, as alleged, has no bearing on whether Philip procured the September Amendments through tortious conduct.   Clifford's claims at Counts 1 and 2 of the Complaint also do not "activate additional legal rights, otherwise dormant" in Philip.  *Cole v. Supreme Cabinets, Inc.*, 2007 WL 1696029, at *3 (M.D. Fla. June 12, 2007).   Rather, Clifford's cause of action, if successful, merely makes it desirable for Philip to contest the January Amendments, a "legal right" Philip has had since he learned of the January Amendments many years ago.[2]

Clifford also seeks "a final judgment approving the accounting of the Trust for the period of October 31, 2011 through April 30, 2015, discharging [him] of any further responsibility in connection with the approved acts."  Complaint, Count 3.  Per the Complaint, Clifford does not seek approval of a *final* accounting of the Trust under Fla. Stat. Ann. § 736.08135(f), and has not included a plan of distribution for any undistributed assets.  Instead, Clifford's cause of action asks the Court to approve an accounting for a specifically delineated time period, documenting activity on the Gloria Trust from October 2011 to April 2015.   Counts 1 and 13 of the Counterclaims, on the other hand, allege that Clifford improperly procured amendments in January of 2011.  Accordingly, the specific factual basis for Counts 1 and 13 does not arise out of the "same operative fact[ ]" as Clifford's action for an accounting for a time period beginning in October of 2011.  *Republic Health Corp.*, 755 F.2d at 1455.  Philip's claims only relate to Count 3 of the Complaint insofar as all claims stem from the same Trust, a basis the Court finds insufficient to establish that Counts 1 and 13 are brought in recoupment.[3]

---

[2] As Counts 1 and 13 of the Counterclaims would otherwise be barred by the statute of limitations, the Court additionally finds that "the policy underlying Rule 13(a) avoidance of multiplicity of lawsuits would not be furthered by requiring that such claims be litigated together."  *United States v. Aronson*, 617 F.2d 119, 121-22 (5th Cir. 1980).

[3] Philip urges that "[t]he issue is singular, not bifurcated: to whom did Gloria Abromats wish to leave her assets?"  ECF No. [75].  The Court declines Philip's invitation to broadly construe Counts 1 and 13 of his

Because the Court finds that the January 2011 Amendments do not arise out of the same "aggregate core of facts upon which" Clifford's Complaint is based, Philip's counterclaims in tort relating to the January 2011 Amendments are not compulsory, and the doctrine of recoupment does not apply to Counts 1 and 13. *See id*. As Counts 1 and 13 are otherwise barred by the applicable statute of limitations, the Court dismisses Counts 1 and 13 of the Counterclaims with prejudice. And, because the Court dismisses the underlying tort actions, Count 14 is dismissed with prejudice as well. Defendant Jack Baxter is dismissed from these proceedings.[4]

### D.       Equitable Estoppel – Counts 2, 3, 4, 5, 10, 12, and 15

Clifford Defendants next move to dismiss the above counts with prejudice, claiming that Philip is equitably estopped from bringing his claims because he "deliberately concealed" the existence of the September 2011 Amendments from Clifford. Motion at 8. "[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 916-17 (11th Cir. 2009). "'Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position.'" *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1330-31 (S.D. Fla. 2010), *aff'd*, 477 F. App'x 702 (11th Cir. 2012) (quoting *Fla. Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So.2d 1091, 1096 (Fla. 2002)). "Equitable estoppel requires: (1) acts or conduct by a party causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts or conduct; and

---

Counterclaims, as the doctrine of recoupment only saves Philip's claims if they are sufficiently related to the claims *Clifford* chose to bring.

[4] The Court, therefore, does not address Clifford's argument that the Court must dismiss these proceedings for lack of complete diversity.

(3) detrimental reliance by the other party upon the state of things so indicated." *In re Vision Dev. Grp. of Broward Cty., LLC*, 411 B.R. 768, 772 (Bankr. S.D. Fla. 2009) (citing *F.D.I.C. v. Harrison*, 735 F. 2d 408, 413 (11th Cir. 1984) and *Dooley v. Weil (In re Garfinkle)*, 672 F. 2d 1340, 1347 (11th Cir. 1982)).

Philip admits that he did not inform Clifford of the September Amendments until March of 2015.  *See* ECF No. [75] at 7.  Clifford argues that because he was not aware of these amendments, he did not know that he owed any duty to Philip during the requisite time period, or that he had otherwise performed his duties as Trustee in a derelict manner.  *See* Motion at 7.  For these reasons, Clifford urges the Court to determine that Philip is equitably estopped from bringing the counterclaims listed above.  Clifford has not cited to a single case in which a court dismissed a cause of action at the motion to dismiss stage on the basis of equitable estoppel.  An equitable estoppel determination is necessarily fact intensive, functioning "as a shield, not a sword . . . [and] presupposes a legal shortcoming in a party's case . . . directly attributable to the opposing party's misconduct."  *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001).  Unsurprisingly then, courts that have adjudicated matters of equitable estoppel at the motion to dismiss stage have done so in the context of a party attempting to use the doctrine as an affirmative defense.[5]  *See, e.g.*, *Debose v. Univ. of S. Florida*, 2016 WL 1367173, at *9 (M.D. Fla. Apr. 5, 2016) ("'In Florida, equitable estoppel is an affirmative defense, not a cause of action and, as a result, claims for equitable estoppel are subject to dismissal.'" (quoting *Rouse v. Nationstar Mortg., LLC*, 2014 WL 1365420, at *3 (M.D. Fla. Apr. 7, 2014)).  While Philip *may* have improperly procured and concealed the September Amendments, the Court finds the record

---

[5] In other cases, a party attempts to use the doctrine of equitable estoppel in order to rebut a statute of limitations defense.  *See, e.g.*, *Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC*, 2013 WL 12093810, at *2 (S.D. Fla. Apr. 29, 2013); *Florida Dep't of Health & Rehab. Servs. v. S.A.P*, 835 So. 2d 1091, 1097 (Fla. 2002); *Morsani*, 790 So. 2d at 1077.

underdeveloped on the issue and, in any event, believes that it cannot properly analyze the equitable estoppel factors without transforming Clifford Defendants' Motion into one for summary judgment.[6]  *See Hernandez v. J.P. Morgan Chase Bank N.A.*, 2016 WL 3982496, at *1 (S.D. Fla. July 22, 2016) (court properly declines to adjudicate issue on motion to dismiss if consideration necessitates transforming motion into one for summary judgment).  Accordingly, dismissal of Philip's counterclaims is not warranted on the basis of equitable estoppel.

### E.      Affirmative Defenses – Counts 5 and 6

Clifford Defendants argue that the Court must dismiss Counts 5 and 6 – Philip's counterclaims for excessive compensation of trustee and reinstatement of Philip as equal beneficiary of the Gloria Trust, respectively – because the counterclaims are actually affirmative defenses.  "'An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matters,' whereas a counterclaim is essentially a separate cause of action seeking affirmative relief."  *Pena v. Magaya Corp.*, 2015 WL 3791732, at *2 (S.D. Fla. June 17, 2015) (quoting *Royal Palm Sav. Ass'n. v. Pine Trace Corp.*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989)).  "Stated otherwise, an affirmative defense is a pleading that bars or voids a cause of action already asserted by an opponent whereas a counterclaim asserts a separate cause of action against the plaintiff that could have been brought as its own proceeding."  *Id.*

Philip could (and in fact, did) bring Counts 5 and 6 as separate causes of action in the Western District of New York, an action now consolidated with the instant matter and administratively closed.  While it is true that Counts 5 and 6, if granted, would seem to bar the relief Clifford seeks, the counterclaims do not require that Philip admit to the allegations in

---

[6] Neither party has requested that the Court adjudicate the Motion as a motion for summary judgment.  To the contrary, neither side appears to desire such action.  *See generally* Motion; *see also* ECF No. [75] at 9 n.7.

Clifford's Complaint in whole or in part.  *See id.*  Both counts request affirmative relief that Philip could have brought affirmatively in separate proceedings. As such, they need not be dismissed as affirmative defenses.

### F.     Injunctive Relief – Counts 7, 8, and 9

Clifford Defendants next argue that Philip insufficiently pleads his requests for injunctive relief.  Count 7 seeks an order for immediate distribution of funds from the George Trust; Count 8 requests a preliminary injunction against Clifford collecting on notes related to the Gloria Trust; and Count 9 demands an injunction against Clifford, enjoining him from expending trust assets on legal fees incurred in this action.  "In order to obtain a preliminary injunction, [a] [p]laintiff must establish the following four elements: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to Plaintiff outweighs the threatened harm the injunction may do to Defendants; and (4) granting the preliminary injunction will not disserve the public interest."  *It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1330 (S.D. Fla. 2013) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)).  "Because a 'preliminary injunction is an extraordinary and drastic remedy,' it is 'not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Id.* (quoting *Church*, 30 F.3d at 1342 (quoting *Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990))).

Philip need not, at the motion to dismiss stage, establish the elements listed above.  Instead, he need only plead factual allegations "sufficient to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Clifford argues only that Philip's claims for injunctive relief

fail to allege "a substantial threat of irreparable injury."   Motion at 10.   A review of the

Counterclaims, however, shows otherwise.  In his Counterclaims, Philip alleges that:

- Cliff's conduct since Gloria's death has been to stall and attempt to starve Philip into submission to an unfair settlement, hoping to wait until March 28, 2016, when the first trust amendment of September 30, 2011 . . . expired and allowed Cliff to reduce to judgment or otherwise attempt to collect approximately $264,000 of Philip's notes to Gloria's trust, a sum Cliff well knows Philip does not have and cannot raise.  That date has now expired.  Counterclaims ¶ 292 (Count 7);

- It is difficult to conceive how trial could take place before 2017, at the earliest, and no assurance Philip or Cliff will remain solvent until that time.  *Id.* ¶ 239;

- Philip and his wife Tish are both plaintiffs' attorneys who do not have a regular cash flow. . . . At present, they do not have the financial resources to await the final resolution of this litigation before receiving a distribution of funds from Philip's parents' trusts. Thus, they have no adequate remedy at law and could well suffer irreparable harm (such as loss of house, judgments imposed against them, ruined credit, bankruptcy) . . . . *Id.* ¶ 294.

- The trusts and Philip would suffer irreparable harm if Cliff makes good on his earlier threat to reduce the value of the trusts to nothing before he allowed Philip to see one cent more than Cliff wanted him to see.  *Id.* ¶ 322 (Count 9);

- The going rate for estate and trust litigators appears to be in the $500 per hour range, and a firm competent to litigate such issues in federal court is likely to staff the case such that there will be six figures of billings within a very short period, money than would be almost impossible for Philip to recover if Cliff does not prevail.  *Id.* ¶ 325.

As reflected above, the instant dispute regards a finite amount of money, and Philip pleads that

absent injunctive relief, Clifford will irreparably deplete Trust assets and Philip may face

financial ruin, as he does not "have the financial resources to await the final resolution of this

litigation." *Id.* ¶ 294.  Based on the above allegations, the Court finds that as plead, Philip has

sufficiently alleged a "substantial threat of irreparable injury."[7]  The cases cited by Clifford, at

---

[7] The Court therefore finds Counts 7 through 9 materially different from the complaint in *Cty. of Monroe, Florida v. Priceline.com, Inc.*, 2009 WL 4890664, at *6 (S.D. Fla. Dec. 17, 2009), the only case cited by Clifford in which a district court dismissed a claim for a preliminary injunction at the motion to dismiss stage.  For, unlike in that case, the Court does not find that Philip has failed to "plead any facts in support of these allegations." *Id.*  The remaining cases relied upon by Clifford all regard situations in which a litigant actually moved for a preliminary injunction. *See It's A 10, Inc.*, 932 F. Supp. 2d at 1334-35; *FHR*

most, indicate that Philip will have difficulty meeting his burden to establish that injunctive relief is warranted.  *See, e.g.*, *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1214 (S.D. Fla. 2011) (finding, on movant's motion for injunction, that "[a]ssuming that it is appropriate to even 'consider' the argument that Turnberry might not have assets to satisfy a money damage judgment . . . the Court has considered that concern and concludes that it is too nebulous and speculative to meet Fairmont's burden of establishing irreparable harm.").  To the extent that Clifford also argues that Philip additionally fails to plead that he lacks an "adequate legal remedy" as required to obtain a *permanent* injunction, *see Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 11127-28 (11th Cir. 2005), the Court finds that Philip makes sufficient allegations at paragraphs 294 and 325 of his Counterclaims.  As such, Counts 7, 8, and 9, survive.

## G.    Reformation of Notes – Count 11

In Count 11, Philip brings a claim for reformation of Clifford's $300,000 and $150,000 notes to the George Trust.  Clifford claims that Philip cannot bring a claim for reformation because he "has no cause of action as to what the terms of these notes 'should have been' . . . [as] he is not a party to them."  Motion at 11.  Philip, on the other hand, argues that "[l]egal reformation has nothing to do with the equitable relief Philip is seeking, and the claim cannot be dismissed on that doctrine."  ECF No. [75] at 13; *see Continuum Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, 2011 WL 2214810, at *2 (S.D. Fla. June 2, 2011).  The Court agrees with Clifford.

---

*TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1213 (S.D. Fla. 2011); *Fluor Daniel Argentina, Inc. v. ANZ Bank*, 13 F. Supp. 2d 562, 564 (S.D.N.Y. 1998).

Philip seeks reformation of written notes executed by Clifford.  Counterclaims ¶¶ 336-37. Philip seeks relief in equity, but cites to no supporting authority, stating only that he asks the Court for "reformation," which constitutes "equitable relief."  ECF No. [75] at 13.  Philip is correct: "[r]eformation is an equitable remedy, which 'acts to correct an error not in the parties' agreement but in the writing which constitutes the embodiment of that agreement." *Kolski ex rel. Kolski v. Kolski*, 731 So. 2d 169, 173 (Fla. 3d DCA 1999) (quoting *Smith v. Royal Automotive Group, Inc*., 675 So. 2d 144, 150-51 (Fla. 5th DCA 1996)).  "It is well-settled that Florida law permits a court to exercise its equitable powers to reform a contract under certain circumstances." *Continuum Condo. Ass'n, Inc.*, 2011 WL 2214810, at *2 (citing *Coda Roofing, Inc. v. Gemini Ins. Co*., 2010 WL 4689325, at *2 (S.D. Fla. Nov. 10, 2010)).  "However, 'Florida courts have sharply delimited a narrow range of circumstances that will support reformation: fraud, inequitable conduct, accident, inadvertence, and mutual mistake.'" *Id.* (quoting *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 8 F.3d 760, 765 (11th Cir. 1993)); *see Barber v. Am.'s Wholesale Lender*, 2013 WL 1149316, at *3 (M.D. Fla. Mar. 19, 2013), *aff'd*, 542 F. App'x 832 (11th Cir. 2013) ("A viable claim for reformation must allege both unilateral mistake by one party and inequitable conduct by the other party.").  Here, Philip appears to argue inequitable conduct and/or fraud as the basis for the reformation he seeks. Thus, at the pleading stage, Philip must allege (1) the existence of a written instrument; (2) fraud or inequitable conduct in the written instruments; and (3) that as a result, the written instruments do not accurately express the intent of the parties.  *See Continuum Condo. Ass'n, Inc.*, 2011 WL 2214810, at *2.

Philip contends that Clifford obtained notes from the Trusts without proper consent.  *See* Counterclaims ¶¶ 341, 342.  Specifically, Philip claims that had he known that Clifford's notes

would not mature until 2018, Philip "would not have consented to the loan and note."  *Id.* ¶ 343. However, Philip "knows full well he was not a party to Cliff[ord's] notes," and appears to concede that under the terms of the Trusts, Clifford did not need Philip's approval to obtain the notes.  *See* ECF No. [75] at 12-13.  Because Philip was not a party to the notes, it is immaterial whether or not he knew of the 2018 maturity date.  As a non-party to the notes, the notes need not "express" Philip's intent, and thus, Philip cannot bring a claim for reformation as currently plead.  *See Continuum Condo. Ass'n, Inc.*, 2011 WL 2214810, at \*2.  Philip does not claim that the notes fail to express the intent of the parties to them, and thus Count 11 must be dismissed.

Philip attempts to avoid this result by arguing that, "as a matter of custom under both trusts, the trustee (then Gloria), and both beneficiaries normally all agreed when loans were made from those trusts."  ECF No. [75] at 12.  However, Philip admits that Count 11 does not plead a cause of action on this basis, *see* ECF No. [75] at 12 n.11, and thus, Philip's arguments cannot save his pleadings.  As plead, Count 11 fails to state a claim for reformation.  Clifford does not request dismissal with prejudice, and accordingly, the Court dismisses Count 11 with leave for Philip to amend.[8]

### H.      Conversion and Civil Theft – Counts 12 and 15

Next up, Philip's claims that Clifford unlawfully converted funds from both Trusts, and that Clifford committed civil theft under Florida law.  Clifford cursorily claims that both counts fail because Clifford, as trustee of both Trusts, "could not have converted or stolen any of the funds in his possession."  Motion at 12.  Philip rejects Clifford's argument by utilizing a heavy

---

[8] To the extent that Clifford argues in Reply that the language of the Trusts contradicts any alleged "custom," the Court believes the dispute beyond the scope of a motion to dismiss.  *See* ECF No. [87] at 9; *Minassian v. Rachins*, 152 So. 3d 719, 725 (Fla. Dist. Ct. App. 2014) (adjudicating the meaning of trust "terms" on summary judgment).  Accordingly, *if* Philip amends Count 11 and *if* Clifford believes the relief requested remains non-actionable based on the language of the Trusts, Clifford may file a motion for partial summary judgment on the issue.

dose of disdain, and without citing to a single case, leaving it to the Court to properly address the issue without sufficient legal support from the parties.[9]

In Count 15, Philip claims that Clifford violated Florida Statues § 825.103(1), "incorporated by" Florida Statutes § 772.11(1).  Counterclaims ¶ 376.  Section 825.103(1) is entitled "Exploitation of an elderly person or disabled adult."  Section 825.103(1)(c) applies to the "[b]reach of a fiduciary duty to an elderly person or disabled adult by the person's . . . trustee who is an individual, or agent under a power of attorney which results in an unauthorized appropriation, sale, or transfer of property."  Fla. Stat. Ann. § 825.103(1)(c).  As such, under Florida law, Clifford's status as Trustee does not, as Clifford argues, necessarily absolve him from liability for the conduct Philip alleges.  Florida Statutes § 772.11(1) provides that

> Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. *825.103(1)* has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

(emphasis added).  Accordingly, § 772.11(1) provides for relief in the event a trustee violates § 825.103(1).  Therefore, Clifford's argument that Philip "cannot use the civil theft statute or an action for conversion to obtain damages for matters which he alleges to be breach of trust" is unavailing.  ECF No. [87] at 10.  Clifford neither cites nor analyzes the Florida statutes underlying Philip's cause of action, and as Florida law appears to provide for trustee liability under certain circumstances, the Court denies the Motion as to Count 15.

Similarly, Clifford has failed to meet his burden to establish grounds for dismissing Count 12.  Florida law defines the tort of conversion as "the wrongful exercise of dominion or

---

[9] While Clifford and Philip have capably argued many issues, this is not the first time that one or both of the litigants in this exceedingly litigious matter have failed to provide the Court with pertinent authority or well-researched arguments.  Both sides are warned that they must attempt to resolve all future disputes *before* requesting the Court's involvement, and that when they do move this Court to take action, they must provide the Court with supporting authority.

control over property to the detriment of the rights of one entitled to possession."  *United States v. Bailey*, 288 F. Supp. 2d 1261, 1269 (M.D. Fla. 2003) *aff'd*, 419 F.3d 1208 (11th Cir. 2005) (citing *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998)); *see Deutsche Bank Nat. Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1119 (M.D. Fla. 2013) ("Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time").  To establish a claim for conversion of money under Florida law, a claimant must demonstrate: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so.  *Bailey*, 288 F. Supp. 2d at 1264 (citing *Navid v. Uiterwyk Corp.*, 130 B.R. 594, 595-596 (M.D. Fla. 1991).

In Count 12, Philip alleges that Clifford, Trustee of both Trusts, unlawfully converted funds from the George Trust to the Gloria Trust.  Counterclaims ¶ 346.  While it may be the case that Philip's claim is more properly brought as a claim for breach of trust, Clifford has not provided the Court with any authority preventing Philip from bringing a claim for conversion under the circumstances presented.  Rather, Clifford argues *only* that pursuant to *Finlayson v. State*, 35 So. 203, 203 (Fla. 1903) "[a] bailee who has lawful possession cannot commit larceny."[10]  Philip, however, claims that Clifford converted funds from one trust to the other, an unauthorized act that deprived Philip of the funds therein.  Accordingly, Count 12 survives.

I.   **Count 16 – Racketeer Influenced and Corrupt Organizations Act ("RICO")**

---

[10] The Court does not consider Clifford's additional argument in his Reply, as "federal courts do not consider arguments that are presented for the first time in a reply brief."  *Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F. Supp. 3d 1295, 1301 (N.D. Ga. 2014); *see also Herring v. Sec'y, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.").

Clifford Defendants save their most substantial challenge for last, arguing that the Court must dismiss Philip's claims under the Racketeer Influenced and Corrupt Organizations Act with prejudice.  RICO provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  "The four elements of civil RICO liability are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  See *Humphrey v. United Parcel Serv.*, 200 F. App'x 950, 952 (11th Cir. 2006) (citation omitted).  Additionally, the Eleventh Circuit has held that a Section 1962(c) claim requires proof "that the enterprise affected interstate commerce."  See *Villeda Aldana v. Fresh Del Monte Produce, Inc.*, 305 F. Supp. 2d 1285, 1306 (S.D. Fla. 2003), *aff'd in part, vacated in part, remanded sub nom. Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005) (citation omitted).  Clifford argues that Philip has failed to plead every element required of RICO, that Philip's claims are barred under the statute of limitations, that Philip lacks standing, and that Count 16 contains a variety of other pleading deficiencies.  *See* Motion at 12-17.  The Court addresses Count 16's most glaring deficiencies, below.

### 1.    Conduct of an "enterprise"

For purposes of RICO, "[t]he Supreme Court has remarked that '[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."  *Handeen v. Lemaire*, 112 F.3d 1339, 1351 (8th Cir. 1997) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  "The term ''enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated-in-fact although not a legal entity."  *Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir.

1998) (quoting 18 U.S.C. § 1961(4)).   "A plaintiff, therefore, may satisfy the requisite 'enterprise' element by proving either the existence of (1) a legal entity, or (2) the existence of a group of individuals who are associated-in-fact."  *Id.*

> A legal entity is one that 'has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations,' [while] [a]n association-in-fact . . . is an ongoing organization with members functioning as a continuing unit.

*Id.* (quoting Black's Law Dictionary (6th ed. 1990) and citing *Aetna Casualty Surety Co. v. Rodco Autobody*, 43 F.3d 1546, 1557 (1st Cir. 1994)); *see* LEGAL ENTITY, Black's Law Dictionary (10th ed. 2014) ("A body, other than a natural person, that can function legally, sue or be sued, and make decisions through agents. • A typical example is a corporation.").  In *Bonner*, the Fifth Circuit Court of Appeals held that "[a] trust is neither a legal entity nor an association-in-fact," and thus, that RICO claims premised on a trust as the predicate enterprise "cannot properly lie."  *Id.* at 459-60; *see also Broussard v. Meineke Disc. Muffler Shops, Inc.*, 945 F. Supp. 901, 910 (W.D.N.C. 1996), *rev'd on other grounds*, 155 F.3d 331 (4th Cir. 1998) (surveying case law, including that in the Eleventh Circuit, to find that "[a]t best, these cases when taken together stand for the proposition that a legal entity or any union or group of individuals associated in fact which otherwise meets the statutory definition of an enterprise may, in addition, include its associated trust funds.").  Clifford argues that the Court should follow *Bonner*, and dismiss Count 16 with prejudice.  Philip concedes that *Bonner*, if followed, requires dismissal of his RICO claims, but argues that the instant case is distinguishable, based on Florida law specific to trusts and language from the Eleventh Circuit's case *Cox v. Adm'r U.S. Steel & Carnegie*, 30 F.3d 1347, 1349 (11th Cir. 1994).  The Court believes *Bonner* persuasive and applicable.

*Bonner* held that trusts "fall within [the] class of intangible rights that cannot constitute a legal entity enterprise under RICO." 147 F.3d at 459.  As the Fifth Circuit explained, a trust is merely "'a fiduciary relationship in which one person is the holder of the title to property subject to an equitable obligation to keep or use the property for the benefit of another,'" consisting, "essentially of rights and duties between two or more parties."  *Id.* (citing Black's Law Dictionary (6th ed. 1990)); *see* TRUST, Black's Law Dictionary (10th ed. 2014).  The *Bonner* Court noted a variety of distinctions between a trust and corporate entity that it believed dispositive for RICO purposes, finding that a trust is more akin to a contract, and that unlike a corporation or other legal entity, a trust "cannot litigate on its own behalf."[11]  *Bonner*, 147 F.3d at 459; *See* LEGAL ENTITY, Black's Law Dictionary (10th ed. 2014) ("A body, other than a natural person, that can function legally, sue or be sued, and make decisions through agents."); *see also Trustees of Hotel Employees & Rest. Employees Int'l Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1184 (N.D. Ill. 1990) ("A trust cannot litigate on its own behalf; the trustee is the proper party to litigate issues on behalf of the trust."); *Village of Brookfield v. Pentis*, 101 F.2d 516 (7th Cir. 1939) (trustee proper party to litigate on behalf of trust); *Pierce v. Chester Johnson Elec. Co.,* 117 Ill. App. 3d 867 (1st Dist. 1983) (trustees possess power to sue in a representative capacity on behalf of the trust); *Villeda Aldana*, 305 F. Supp. 2d at 1306 (noting that the Eleventh Circuit requires that the RICO "defendants were *employed by or associated with* the enterprise" (emphasis added)).

So too, Florida law provides that "[a] trustee" – and not the trust itself – "shall take reasonable steps to take control of and protect the trust property."  Fla. Stat. Ann. § 736.0809

---

[11]  The *Bonner* Court also noted that "[i]n simple terms, a trust bears no characteristics of an association-in-fact." 147 F.3d at 459-60.  Philip does not argue that a Florida trust qualifies as an "association-in-fact" for purposes of RICO, and the Court agrees with the *Bonner* Court's holding that it does not.

(entitled: "Enforcement and defense of claims").  Philip posits that this language in fact shows that a Florida trust constitutes a distinct legal entity for RICO purposes.  The Court disagrees, reading this language as standing for the unremarkable proposition that a trust contains property, and that if said property needs protection, the trustee is tasked with taking action.  Section 736.0816(14) reiterates this concept, providing that the "[s]pecific powers of trustee" include the power to **"**[p]ay or contest any claim, settle a claim by or against the trust, and release, in whole or in part, a claim belonging to the trust."  In fact, all of Philip's references to the Florida trust code in his Response serve only to show that a Florida trust contains property, and that the trustee has authority to act on the trust's behalf.  *See* ECF No. [75] at 15 (citing Fla. Stat. Ann. §§ 736.0811 and 736.1005).  "The common law of trusts and principles of equity" apply to Florida trusts, except as modified by law.  Fla. Stat. Ann. § 736.0106.  Like the Louisiana and Texas trust law reviewed in *Bonner*, Florida law appears to recognize "trusts as fiduciary relationships," in which the trustee exercises authority to initiate action for the trust, including lawsuits.  *See Bonner*, 147 F.3d at 460 n.14; *see also* Fla. Stat. Ann. § 736.0801 ("Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this code."); Fla. Stat. Ann. § 736.1008(6)(a) ("Ten years after the date the trust terminates, the trustee resigns, or the fiduciary relationship between the trustee and the beneficiary otherwise ends . . . ."). Following review of Florida trust law under the guidance set forth in *Bonner*, the Court finds that a Florida trust does not constitute a legal entity for RICO purposes.

     *Cox v. Adm'r U.S. Steel & Carnegie*, *infra*, relied upon heavily by Philip, does not alter this conclusion.  In *Cox*, the Eleventh Circuit held that a "pension fund is an enterprise" for purposes of RICO, and constitutes an entity separate from the employer corporation.  30 F.3d at

1349.  Two years later, the Eleventh Circuit reaffirmed this principle in *United States v. Beasley*, acknowledging that "[a] variety of entities can be enterprises, including benevolent and nonprofit organizations such as unions and *benefit funds*, governmental units, courts and judicial offices, police departments, and motorcycle clubs to name a few."  72 F.3d 1518, 1525 (11th Cir. 1996) (emphasis added).  Notably, the Eleventh Circuit did not list *inter vivos* trusts.  And, based on *Bonner*, *Cox*, and the Florida trust law analyzed above, the Court rejects Philip's attempt to analogize a pension fund to the Gloria and George Trusts.  For instance, while Philip is correct that trusts, similar to the pension fund in *Cox*, can theoretically "continue long after" Clifford passes away, the Gloria and George Trusts cannot "continue" separate from a trustee, or the beneficiaries listed in the Trust document.  *See Cox*, 30 F.3d at 1349.  Additionally, trusts do not have "a separate corporate existence," are not "membership corporation[s]" or organizations at all, and do not have their "own governance . . . controlled and regulated by comprehensive statutory and regulatory provisions," apart from the Florida trust law that counsels *against* the finding that a trust constitutes a legal entity for RICO purposes.  *See id.*  Accordingly, for all of the reasons expressed above, the Court finds that the Trusts do not qualify as an "enterprise" under RICO, and dismisses Count 16 with prejudice.

### 2.     *Pattern of racketeering: mail and wire fraud*

In addition, the Court finds that Count 16 fails to plead a "pattern of racketeering." Where, as here, the predicate "pattern of racketeering" activity is based on allegations of mail and wire fraud, a claimant must allege the existence of a scheme to defraud, and that the defendants "intentionally participate[d] in a scheme to defraud another of money or property and use[d] the mails or wires in furtherance of that scheme."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010); *see Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1224-25

(S.D. Fla. 2015).  "In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity."  *Am. Dental Ass'n*, 605 F.3d at 1290-91 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240, (1989)).  "Courts have noted that RICO allegations 'merit particular scrutiny if . . . the predicate acts are mail and wire fraud, and if the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion.'"  *Rothstein v. GMAC Mortgage, LLC*, 2013 WL 5437648, at *12 (S.D.N.Y. Sept. 30, 2013) (quoting *Rosenson v. Mordowitz*, 2012 WL 3631308, at *4 n.3 (S.D.N.Y. Aug. 23, 2012) and citing *Am. Fed. of State, Cnty. and Mun. Emps. Dist. Council 37 v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2013)).

"[I]n the Eleventh Circuit '[a] scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts reasonably calculated to deceive persons of ordinary prudence.'"  *Lockheed Martin Corp. v. Boeing Co.,* 357 F. Supp. 2d 1350, 1372 (M.D. Fla. 2005) (quoting *United States v. Hasson*, 333 F.3d 1264, 1270-71 (11th Cir. 2003) and citing *Neder v. United States*, 527 U.S. 1, 21, 25, (1999)).  A plaintiff must establish that the defendant "had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by its misrepresentations" which amounts to "the same showing of reasonable reliance that is required for establishing common law fraud."  *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1503 (11th Cir. 1991); *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998) (stating that a plaintiff must "prove that a reasonable person would have relied on the misrepresentations")).

Because Philip's RICO claims are predicated on allegations of fraud, the allegations must satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b)[12] and allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [Philip]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n,* 605 F.3d at 1291 (citations omitted).   In this case, Philip has plead many facts related to the loans and gifts Clifford allegedly secured from the Trusts.   However, Philip has not plead facts sufficient to satisfy the heightened pleading requirement of Rule 9(b), nor has he adequately plead a pattern of conduct such that there exists a threat of continued criminal activity.   *See id.* at 1290-91. Philip fails to plead the *precise* statements or misrepresentations Clifford made, or the *precise* time and place of such statement.   *See id.*   While it may not always be necessary for a claimant "to point to affirmative misstatements" as Philip argues, a RICO claimant must still point to a precise "nondisclosure of material information" in order to "establish the requisite fraudulent intent of a defendant under the mail and wire fraud statutes."   *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1359 (11th Cir. 2004) (citing *Langford v. Rite Aid of Ala., Inc*., 231 F.3d 1308, 1312 (11th Cir. 2000)).   Moreover, and taking all of the allegations as true, Philip essentially pleads that Clifford acquired loans and/or gifts from the Trusts by omitting his intention to secure a maturity date of 2018 or without proper consent, allegations the Court is hard-pressed to conclude may serve as the predicate basis for fraudulent conduct within the meaning of Fed. R. Civ. P. 9(b) under the circumstances presented.   *See W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc*., 287 Fed. App'x 81, 86 (11th Cir. 2008) (Rule 9(b) "requires that a

---

[12] Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).

complaint plead facts giving rise to an inference of fraud."); *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) (Rule 9(b) forces a plaintiff to "offer more than mere conjecture").  Count 16 largely rehashes and combines many of Philip's prior claims in an effort to create a RICO cause of action due to Clifford's use of wire and/or mail services to effectuate the alleged improper conduct. However, as the D.C. Circuit has cautioned

> It will be the unusual fraud that does not enlist the mails and wires in its service at least twice. Although a RICO claim may be based only on predicate acts consisting exclusively of mail and wire fraud, scrutiny of such claims is necessary, and not inconsistent with the breadth of RICO. The pattern requirement thus helps to prevent ordinary business disputes from becoming viable RICO claims, with defendants subject to treble damages, simply because the parties used the United States mails or a fax machine to transmit contested financial documents.

*W. Associates Ltd. P'ship, ex rel. Ave. Associates Ltd. P'ship v. Mkt. Square Associates*, 235 F.3d 629, 637 (D.C. Cir. 2001) (internal citations and quotations omitted).  The instant dispute concerns a sadly not-so-uncommon dispute between two brothers over the funds contained in their deceased parents' Trusts.  Clifford's use of mail or wire services does not make it more. For the reasons expressed above, the Court concludes that Count 16 fails to plead a RICO cause of action.

## IV.     CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1.  Clifford Defendants' Motion to Dismiss, **ECF No. [63]**, is **GRANTED** in part and **DENIED** in part;

2.  Counts 1, 13, 14, and 16 of Philip's Amended Answer, Affirmative Defenses, and Counterclaims, ECF No. [37], are **DISMISSED WITH PREJUDICE**;

Case No. 16-cv-60653-BLOOM/Valle

3. Count 11 of Philip's Amended Answer, Affirmative Defenses, and Counterclaims, ECF No. [37], is **DISMISSED**.  Philip has until **September 21, 2016** to amend Count 11;

4. Counter Defendant Jack Baxter is **DISMISSED** from these proceedings;

5. Baxter's Motion to Dismiss, **ECF No. [59]**, is **DENIED** as moot;

6. Clifford Defendants have until **September 28, 2016** to file an Answer to Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, and 15 of the Counterclaims.

**DONE AND ORDERED** in Miami, Florida, this 14th day of September, 2016.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

28