**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-cv-60653-BLOOM/Valle**

G. CLIFFORD ABROMATS,
individually and as Trustee of the Gloria J.
Abromats Revocable Trust Agreement
u/t/d September 15, 2005, as amended,

    Plaintiff/Counter-Defendant,

v.

PHILIP ABROMATS,
individually and as qualified beneficiary
Gloria J. Abromats Revocable Trust Agreement
u/t/d September 15, 2005, as amended,

    Defendant/Counter-Plaintiff.
_____/

**ORDER ON MOTION TO REINSTATE CASE AND
<u>MOTION TO ENJOIN TRUSTEE FROM USING TRUST ASSETS</u>**

**THIS CAUSE** is before the Court upon Defendant/Counter-Plaintiff Philip Abromats's ("Philip") Motion to Reinstate N.Y. Case, Dismiss or Consolidate Fla. Case, and Grant Relief Under N.Y. C.P.L.R. § 2701 ("Motion to Reinstate"), ECF No. [89], and Motion to Enjoin Trustee from Using Trust Assets to Fund Legal Fees and Costs, ECF No. [76] ("Motion to Enjoin") (collectively, the "Motions"). In the latest installment of this contentious litigation, Philip seeks to reopen and reinstate proceedings transferred from the Western District of New York, and asks the Court to enjoin his brother, Plaintiff/Counter-Defendant G. Clifford Abromats ("Clifford"), from using trust assets to fund this case. For the reasons that follow, both Motions are denied.

I. **BACKGROUND**

The background of these proceedings is known to all parties and extensively documented in this Court's prior Orders. *See Abromats v. Abromats*, 2016 WL 4366480 (S.D. Fla. Aug. 16, 2016) (ECF No. [72]); *Abromats v. Abromats*, 2016 WL 4917153 (S.D. Fla. Sept. 15, 2016) (ECF No. [93]); *see also* ECF No. [52]. For purposes of the instant Motions, Clifford is Trustee of the Gloria Abromats ("Ms. Abromats" or "Gloria") Trust ("Gloria Trust"), and George Abromats Trust ("George Trust") (collectively, the "Trusts"), settled by the parties' parents before they passed away. On March 11, 2010, Gloria Abromats accorded Clifford power of attorney. *See* ECF No. [37] ¶ 96. Philip and Clifford were beneficiaries of both Trusts, but on January 17, 2011, Ms. Abromats disinherited Philip from her Trust (the "January Amendments"). *See id.* ¶ 111. Philip did not learn of the January Amendments until August 31, 2011. *See id.* ¶ 122. Shortly thereafter, in September of 2011, Philip traveled to his mother's residence in Fort Lauderdale, where Ms. Abromats purportedly again amended the Trust (the "September Amendments"), "revok[ing] the January 2011 disinheriting amendment . . . reinstat[ing] the equal (not necessarily 50% each) distribution between the brothers, and [making] Gloria's trust irrevocable." *Id.* ¶ 155; *see id.* ¶¶ 145-58. On October 31, 2011, Gloria resigned as trustee of both Trusts, and Clifford formally became Trustee. *See id.* ¶ 163. Philip did not inform Clifford of the September Amendments until shortly before Ms. Abromats passed away, on March 18, 2015. *See id.* ¶ 24.

Since 2011, Clifford has received gifts and loans from the Gloria Trust, and has transferred funds from the George Trust to the Gloria Trust. Philip alleges that these actions and other inactions constitute a breach of trust, and that under Florida law, the Court should enjoin

Clifford from using Trust assets to litigate this case. *See* Motion to Enjoin. Clifford's Response, and Philip's Reply, timely followed. *See* ECF Nos. [88], [94].

## II.     MOTION TO REINSTATE

Before reviewing the Motion to Enjoin, however, the Court addresses Philip's Motion to Reinstate, which became ripe on October 6, 2016. As the parties are well aware, Philip filed a complaint against Clifford in the Western District of New York (the "New York action") before Clifford filed complaints in the Seventeenth Judicial Circuit in and for Broward County, Florida, later removed to this Court.[1] After removal of the state court matters, the Western District of New York transferred Philip's case to the Southern District of Florida, which appeared on the docket of this Court at Case No. 16-cv-61649-BB. On July 13, 2016, the Court consolidated the transferred New York action with the instant proceedings and, pursuant to the Southern District of Florida's internal operating procedures, closed the case, directing that all future filings be made in Case No. 16-60653-BB, as the lower-numbered case. *See* ECF No. [52]. In the three months since the Court consolidated the New York action with the instant proceedings, the parties have filed and the Court has adjudicated Philip's motion to dismiss for lack of personal jurisdiction, Clifford's motion to dismiss Philip's Counterclaims, and a litany of less dispositive motions, all in an effort to ensure that this matter timely proceeds on the scheduling track suggested by the parties in early August. *See* ECF Nos. [65], [67]. Philip now asks the Court to reconsider its decision consolidating and closing the New York action.

The Court made it clear on August 15, 2016 that it "will deem the removed Complaint, ECF No. [1], Exh. A, as the operative Complaint in this matter, with Philip's Amended Answer and Counterclaims, ECF No. [37], serving as Philip's operative Answer and Counterclaims."

---

[1] The Court remanded the George Trust matter to state court on July 13, 2016. *See* ECF No. [52] at 8.

ECF No. [72] at 16.  Cognizant of the unique nature of these proceedings and in an abundance of caution, the Court further noted that "[i]t appears that the parties do not object to this posture, for, as of the date of this Order, both Counter-Defendants have moved to dismiss Philip's Counterclaims, and Philip has filed a Response in opposition to one of the motions." *Id.* at 16 n.3.  Subsequent actions by the parties confirmed the Court's belief, and this matter has now been extensively litigated under the assumption that Philip is the Defendant/Counterclaim-Plaintiff, and the New York action is closed.  Philip's Motion to Reinstate asks the Court to disrupt this posture.  While Philip states in Reply that he "has no issue with the current alignment of the parties," the relief he seeks – application of New York law and remedies to the instant dispute – necessarily requires that the Court reconsider its decision to consolidate and close the New York action with Clifford's Florida proceedings and apply Florida law to this dispute.  Because the decisions Philip asks the Court to revisit are "now the law of the case," the Court reviews Philip's Motion to Reinstate as a motion to reconsider its prior Orders.  *Miccosukee Tribe of Indians of Florida v. United States*, 706 F. Supp. 2d 1296, 1320 (S.D. Fla. 2010), *modified in part*, 2011 WL 1624977 (S.D. Fla. Apr. 26, 2011); *see Fontainebleau Hotel Corp. v. Crossman*, 286 F.2d 926, 928 (5th Cir. 1961)[2] ("The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." (internal quotations omitted)).

"Courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Williams v. Cruise Ships Catering & Serv.*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981.

4

*Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004) (citing *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)); *see Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Wendy's Int'l, Inc. v. Nu-Cape Const., Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996); *see also Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012). "Motions for reconsideration are appropriate where, for example, the Court has patently misunderstood a party." *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1283 (S.D. Fla. 2003); *see Eveillard v. Nationstar Mortgage LLC*, 2015 WL 1191170, at *6 (S.D. Fla. Mar. 16, 2015). To establish grounds for reconsideration, "the movant must do more than simply restate his or her previous arguments, and any arguments the movant failed to raise in the earlier motion will be deemed waived." *Compania*, 401 F. Supp. 2d at 1283.

According to Philip, reconsideration is warranted because after transfer of venue and under the "first to file" rule, the law of the first-filed case normally applies to a dispute, making the New York action the appropriate lead case in these consolidated proceedings. Philip requests reconsideration because he desires that New York law apply, potentially affording him relief under N.Y. C.P.L.R. § 2701. The Court, therefore, interprets Philip as arguing for reconsideration "to correct clear error or prevent manifest injustice." *Williams*, 320 F. Supp. 2d at 1358. Under the circumstances presented, the Court finds that Philip has failed to establish grounds for reconsideration.

The Court consolidated the New York action with Clifford's Florida case pursuant to Fed. R. Civ. P. 42(a)(2), and, having consolidated the matters "'for all purposes[,]'" the Court

treats the cases "as a single, unified case." *Medina v. United Christian Evangelistic Ass'n*, 2009 WL 3161654, at *2 (S.D. Fla. Sept. 29, 2009) (quoting *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1048-49 (11th Cir. 1989)). "The 'first to file' rule states that 'where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.'" *Hernandez v. Cracker Barrel Old Country Store, Inc.*, 2014 WL 5175715, at *1 (M.D. Fla. Oct. 14, 2014) (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)). In general, "application of the first-filed rule is not mandatory, but rather committed soundly to the district court's discretion." *Id.* at *2 ("district courts have the discretion to dispense with the first-to-file rule where equity so demands") (citing *Allstate Ins. Co. v. Clohessy*, 9 F.3d 1314, 1316 (M.D. Fla. 1998) and quoting *Barnett v. Ala.*, 171 F. Supp. 2d 1292, 1296 (S.D. Ala. 2001)). Where 'compelling circumstances' exist indicating the second-filed case should proceed, a court properly declines to apply the first-to-file rule. *Nation Motor Club, Inc. v. Stonebridge Cas. Ins. Co.*, 2013 WL 6713567, at *6 (S.D. Fla. May 20, 2013) (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)). Similarly, "[w]hen 'the balance of convenience tips in favor of the second forum or there are special circumstances which justify giving priority to the second action,' courts may deviate from the first-filed rule." *Id.* (quoting *Vital Pharm., Inc. v. Cytosport, Inc.*, 2009 WL 302277, at *2 (S.D. Fla. Feb. 9, 2009)). "Importantly, the factors considered when determining whether to follow the first-filed rule, including considerations of convenience and judicial economy . . . are the same factors which are considered in determining whether transfer is proper under 28 U.S.C. § 1404(a)." *Id.* (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)).

At this point in the proceedings and considering the discretion afforded the Court in applying the first to file rule, the Court does not find that its decision to consolidate and close the New York action constituted "clear error," or resulted in "manifest injustice." In its decision to consolidate the cases under Case No. 16-60653-BB, the Court considered, among other things, the significant judicial resources already devoted to the Florida cases, and Philip's demonstrated intent to bring his affirmative claims as counterclaims in the Florida proceedings. Importantly, this Court only had cause to consolidate the cases in the first place because the Western District of New York determined that nearly all of the factors outlined at 28 U.S.C. § 1404(a) favored a venue transfer. Moreover, and unlike the many cases cited by Philip, there is no risk of "potentially conflicting rulings" necessitating application of the first to file rule, as all proceedings are consolidated together before this Court and the Court has found Florida law applicable to the dispute. *See Nebula Glass Int'l, Inc. v. Budnick Converting, Inc*., 2010 WL 473330, at *1 (S.D. Fla. Feb. 5, 2010). Accordingly, the Court does not find cause to disrupt its prior rulings. To the extent the Philip argues that justice requires he be afforded the remedy provided at N.Y. C.P.L.R. § 2701, Florida trust law provides comparable remedies,[3] and in any event, does not constitute sufficient grounds to upset the procedural posture of this case. Philip's Motion to Reinstate is denied.

## III.       MOTION TO ENJOIN

Having decided that these proceedings will remain undisturbed, with the New York action closed and consolidated with Case No. 16-60653, the Court addresses Philip's Motion to Enjoin under Florida law. Philip moves the Court, pursuant to Fla. Stat. § 736.0802(10)(e), to

---

[3] Philip's Motion to Enjoin, filed pursuant to Fla. Stat. Ann. § 736.0802(10)(e) and adjudicated concurrently in this Order, is one such example.

enjoin Clifford from using Trust assets to litigate this case. Having thoroughly considered both Philip and Clifford's arguments and the applicable law, the Court denies the Motion to Enjoin.

### A. Legal And Evidentiary Standard

Under Florida law, "[i]f a trustee incurs attorney fees or costs in connection with a claim or defense of a breach of trust which is made in a filed pleading, the trustee may pay such attorney fees or costs from trust assets without the approval of any person and without any court authorization." Fla. Stat. Ann. § 736.0802(10)(b). Simply put, "[i]n Florida, a trustee is entitled to receive payment of his reasonable expenses in managing a trust, including attorney's fees, from the assets of a trust he manages." *First Union Nat'l Bank v. Jones*, 768 So. 2d 1213, 1214 (Fla. 4th DCA 2000) (citing *Bay Biscayne Co. v. Baile*, 73 Fla. 1120, 75 So. 860 (1917) and *Smith v. Jones*, 120 Fla. 237, 162 So. 496 (1935)). "'Costs and counsel fees . . . should be allowed in those cases where a trustee, in good faith, institutes or defends an action or incurs legal expense in connection with his duties and responsibilities as trustee.'" *Id.* at 1215 (alteration in original) (quoting *West Coast Hosp. Ass'n v. Florida Nat'l Bank of Jacksonville*, 100 So. 2d 807, 812 (Fla. 1958)). However,

> [u]pon the motion of any qualified beneficiary who is not barred under s. 736.1008 and whose share of the trust may be affected by the use of trust assets to pay attorney fees or costs as provided in paragraph (b), the court may prohibit the trustee from using trust assets to make such payment and, if such payment has been made from trust assets after service of a notice of intent, the court may enter an order compelling the return of the attorney fees and costs to the trust, with interest at the statutory rate.

Fla. Stat. Ann. § 736.0802(10)(e). Florida trust law, nonetheless, favors allowing trustees to recoup or pay litigation expenses with trust assets, mandating that a court "shall deny" a motion to enjoin a trustee from using trust assets "unless it finds a reasonable basis to conclude that there has been a breach of trust." Fla. Stat. Ann. § 736.0802(10)(e)(1); *see Schwab v. Huntington Nat.*

*Bank*, 516 F. App'x 545, 550 (6th Cir. 2013) (reviewing changes in Florida trust law and finding "[i]n stark contrast to the old law, the new law puts the burden on the beneficiary to seek a court order enjoining such payments."). Moreover, even if a court "finds there is a reasonable basis to conclude there has been a breach of trust, the court may still deny the motion if it finds good cause to do so." Fla. Stat. Ann. § 736.0802(10)(e)(1).

The movant bears the burden to show that a "reasonable basis exists, and the trustee may rebut any such showing by presenting affidavits, answers to interrogatories, admissions, depositions, and any evidence otherwise admissible under the Florida Evidence Code." Fla. Stat. Ann. § 736.0802(10)(e)(2). Accordingly, Philip has the burden to "'make a reasonable showing by evidence in the record or by proffering evidence that provides a reasonable basis for a court to conclude that there has been a breach of trust.'"[4] *Covenant Trust Co. v. Guardianship of Ihrman*, 45 So. 3d 499, 504 (Fla. 4th DCA 2010) (quoting former Fla. Stat. Ann. § 736.0802(10)(b)); *see Schwab*, 516 F. App'x at 550 (citing *Covenant Trust Co.*, 45 So. 3d at 504).

B.  **ANALYSIS**

"A breach of trust is '[a] trustee's violation of either the trust's terms or the trustee's general fiduciary obligations.'" *Covenant Trust Co.*, 45 So. 3d at 504 (quoting Black's Law Dictionary 201 (8th ed. 2004)); *see* BREACH OF TRUST, Black's Law Dictionary (10th ed. 2014) ("A trustee's violation of either the trust's terms or the trustee's general fiduciary obligations; the violation of a duty that equity imposes on a trustee, whether the violation was willful, fraudulent, negligent, or inadvertent."). "'A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust.'" *Berlinger Wells Fargo, N.A. v. Berlinger*, 2016 WL 740521, at *9 (M.D.

---

[4] While unsupported, conclusory allegations are insufficient, the Court does not believe that Philip has a burden akin to that of a movant on summary judgment, as Clifford appears to argue. *See* ECF No. [88] at 5 n.4; *see also Covenant Trust Co.*, 45 So. 3d at 504.

Fla. Feb. 25, 2016) (quoting Fla. Stat. § 736.1001(1)). "The elements of a claim for breach of trust or fiduciary duty under Florida law are: '(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.'" *Id.* (alternations omitted) (quoting *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010) and citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).

Clifford clearly has a fiduciary duty as Trustee of both Trusts. Philip argues that Clifford breached that duty by:

1. Gifting himself over $500,000 of assets from the Gloria Trust without informing Gloria (the life beneficiary) or Audrey Joyce (a remainderwoman entitled to a $150,000 bequest);

2. Transferring $229,492.06 of principal from the George Trust to the Gloria Trust without informing Philip;

3. Borrowing $150,000 from the George Trust on October 10, 2011 without notifying Philip and Gloria or seeking their consent, per established custom;

4. Failing to provide Philip with timely notices and accountings, or a distribution from the George Trust;

5. Failing to inform Philip that he had assumed the trusteeships until May 9, 2012, over six months after assuming the position; and

6. Failing to serve requisite notice of his intent to use trust funds in this litigation.

*See* Motion to Enjoin at 4-5, 6, 8, 9. In support of his position, Philip has produced a letter from his wife and attorney – Letitia Abromats, an October 2011 letter from a Dr. Rooney concerning Ms. Abromats's health, a partial state court docket regarding the George Trust matter, his own affidavit, an affidavit from Audrey Joyce, and an affidavit from attorney Gary Rudolf. *See* ECF

Nos. [94-1]–[94-4], [96], [115].  Philip also cites to Clifford's proposed accounting of the Gloria Trust at ECF No. [1-1], and to various documents included with Philip's original Counterclaims, ECF No. [15].

While Gloria Abromats lived and her Trust remained revocable, Clifford owed Ms. Abromats, and only Ms. Abromats, "the duties of [a] trustee."[5]  *See* Fla. Stat. 736.0603(1) ("While a trust is revocable, the duties of the trustee are wed exclusively to the settlor.").  The Gloria Trust explicitly permits Ms. Abromats to direct the Trustee to distribute gifts as Ms. Abromats wished.  It also allows, among other things, the Trustee "to make cash advances or loans to beneficiaries with or without security."  ECF No. [1-1] at 15 (Gloria Trust Art. 11 § S). Ms. Abromats additionally provided Clifford with power of attorney ("POA"), allowing Clifford "full power to act for me and in [her] name with the same effect as though [she] were personally present and acting for [herself]."  ECF No. [15-48] ¶ 1.  The POA authorized Clifford, Ms. Abromats's "Attorney-in-Fact," to  "make gifts . . . including circumstances where my Attorney-in-Fact is also a permitted donee hereunder."  *Id.* ¶ 9(o).  All of this is in accordance with Florida law, which permits a trustee to provide distributions to himself if "[t]he transaction was authorized by the terms of the trust," "[t]he beneficiary consented to the trustee's conduct" or ratified it, or "[t]he transaction was consented to in writing by a settlor of the trust while the trust was revocable." Fla. Stat. Ann. § 736.0802(a), (d), (f).

Ms. Abromats's grant to Clifford of broad authority over her Trust and financial affairs – and Philip's apparent acceptance of this arrangement for many years – indicates that Ms. Abromats trusted Clifford and consented to the actions he took as Trustee.  Philip has the evidentiary burden to establish a reasonable basis for the Court to conclude otherwise, but has

---

[5] To the extent the September Amendments made the Trust irrevocable, both parties agree that because Philip kept the Amendments secret, Clifford should be held to the fiduciary duty owed by a trustee of a revocable trust until at least March 18, 2015.

failed, providing largely speculative evidence in support of his position.  Undoubtedly, Philip is at a bit of a disadvantage, having to establish a basis for concluding that something *did not* occur many years ago.  But it is Philip who moves the Court to enjoin Clifford from exercising the rights afforded to him under Florida law and the Trust document prior to the close of discovery.  In rebuttal, Clifford has provided an affidavit, in which he states that Ms. Abromats was aware of his financial difficulties in 2008 or 2009, and accordingly told him "to take what [he] needed to make it through this difficult time."  ECF No. [88-5] ("Clifford Aff.") ¶ 38.  Clifford explicitly states that he "never took anything without [Ms. Abromats's] knowledge or approval."  *Id.* ¶ 40.  Jack Baxter, an attorney who has represented George, Gloria, and Clifford Abromats at various junctures, similarly states that he instructed Clifford "*not to hide anything* from his mother and keep her informed on the administration of and distributions from the George Trust and the Gloria Trust; and from my conversations, with both [Clifford] and Gloria J. Abromats, I surmised that my directs were being followed."  ECF No. [88-4] ("Baxter Aff.") ¶ 7 (emphasis added).  Faced with these sworn affidavits, Philip's statements regarding his brother's purported character flaws, and Philip's medical opinion that his mother "was in no mental position to approve substantial gifts to anybody" as of November 2012, fails to establish a reasonable basis to conclude that Clifford breached his fiduciary duties to Ms. Abromats.[6]  ECF No. [94-4] ¶¶ 6, 13 ("Philip Aff.").

Philip's remaining accusations are similarly unpersuasive.  First, Philip claims that Clifford transferred funds from the George Trust and into the Gloria Trust because Clifford believed Philip disinherited from the Gloria Trust, thus allowing Clifford to rob Philip of his

---

[6] The record contains competing and underdeveloped evidence of Ms. Abromats's health during the time periods in question.  As the issue has a potentially dispositive effect on the validity of the January and/or September Amendments – the central dispute at issue in this case – the Court reserves a determination of Ms. Abromats's mental state for a later, more fully briefed, day.

share of the George Trust unencumbered. Clifford, however, has provided a persuasive explanation for his actions by way of affidavit, *see* Clifford Aff. ¶¶ 10-30, and while Philip does not "believe" Clifford's "narrative," the Court finds that Clifford's explanation sufficiently rebuts Philip's largely unsupported accusations. *See* Fla. Stat. Ann. § 736.0802(10)(e)(2). The Court will not enjoin Clifford from exercising his rights as Trustee based primarily on Philip's contested logic and belief.

Philip stands on firmer evidentiary ground with his arguments regarding Clifford's failure to provide Philip with notice of transfers from the George Trust, but the Court nonetheless finds that Philip has failed to establish a reasonable basis for a breach of trust on this ground. As an initial matter, while a trustee has a duty to keep "beneficiaries reasonably informed about the trust and its administration," *Brent v. Smathers*, 547 So. 2d 683, 685 (Fla. 3d DCA 1989), Philip has not cited to persuasive authority in which a court enjoined a trustee from using trust funds in litigation based solely on allegations of insufficient notice related to the trust's administration. In any event, "'in the absence of a request, the trustee is ordinarily not under a duty to furnish information to the beneficiary.'" *Schwab*, 516 F. App'x at 551 (quoting *Smathers*, 547 So. 2d at 685-86). A trustee is, however, "'under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person with respect to his interest.'" *Id.* (quoting *Smathers*, 547 So. 2d at 686). Throughout his tenure as Trustee, Clifford periodically provided Philip with brokerage statements from Wells Fargo connected to the George Trust. *See* ECF No. [94] at 12; *see also* Philip Aff. ¶¶ 14-15. The statements specifically identified transfers to the Gloria Trust. *See* ECF No. [88] at 12 (uncontested by Philip). Philip states that the statements were insufficient, as they "only provided information

that money had been removed, and if one squinted and inferred from the statements that Gloria's trust was the recipient, where it went, but not why it went there." ECF No. [94] at 12. Philip, however, is a seasoned attorney who is clearly familiar with the financial background of both Trusts. Clifford provided Philip with relevant statements, and Philip had another attorney review the statements on occasion, but at no point did Philip raise concerns of improper withdrawals to Clifford.[7] *See* ECF No. [96-1] ¶¶ 6-7. Squinting concerns aside, the statements document withdrawals from the George Trust to the Gloria Trust, and under the circumstances presented on the Motion to Enjoin, the Court finds the statements provided Philip with sufficient knowledge to request further information, if he desired. *See* ECF No. [88] at 12. Absent such inquiry on Philip's part, the Court does not find that a reasonable basis exists to conclude Clifford failed to "communicate . . . material facts affecting [Philip's] interest." *Schwab*, 516 F. App'x at 551. Relatedly, in regards to Clifford's alleged failure to provide notice of the $150,000 he borrowed from the George Trust *before* he became Trustee, and his purported violation of the brothers' "custom," the record is undeveloped and does not establish a reasonable basis to conclude a breach of trust.

Philip also argues that Clifford improperly failed to inform him that he had become Trustee for six months in 2012. However, the record indicates that Philip was aware of Clifford's status as Trustee shortly after his appointment to this role. Moreover, Philip has failed to show what damages he proximately suffered as a result, four years ago. As to the Trust accountings, Clifford has now provided them. Contrary to Philip's assertions, Florida trust law does not require that Clifford *provide* an accounting within 60 days of Ms. Abromats's death, but rather, that he "give notice . . . of . . . the *right* to accountings" within such time. Fla. Stat.

---

[7] To the extent that Philip or his attorney requested information, Jack Baxter states that he would "supply the requested information to Philip/Rudolph's apparent satisfaction." Baxter Aff. ¶ 3.

736.0813(1)(b) (emphasis added). This, Clifford did, in response to Philip's request within one month of Ms. Abromats's passing. *See* ECF No. [88] at 18. Finally, the Court rejects Philip's argument that Clifford failed to serve proper notice of his intent to use trust funds in this suit. Florida trust law requires that "after a breach of trust action or defense has been asserted, the trustee's only affirmative duty is to give notice to the beneficiaries of the fees it intends to pay from the trust." *Schwab*, 516 F. App'x at 550; *see* Fla. Stat. Ann. § 736.0802(10)(b). Clifford filed notice of his intent to use trust funds on April 1, 2016, and emailed notice to Philip's attorney (Philip's wife) that same day, after Philip had been served with process in the state court action and *before* Philip asserted a breach of trust defense or counterclaim in the Florida action. *See* ECF Nos. [13-1], [15]. Moreover, Fla. Stat 736.0802(10)(c) provides that service of notice can be made "in any manner provided for service of pleadings and other documents by the Florida Rules of Civil Procedure." The Florida Rules allow for service via email, *see* Fla. R. Jud. Admin. 2.516, and Philip does not challenge the substance of Clifford's email service. The record clearly shows that Philip and his attorney were aware very early in these proceedings that Clifford intended to use trust funds to litigate this matter. *See* ECF Nos. [13-1], [88-1]. Whether Philip filed the notices in state court shortly after removal, rather than federal court, does not change this fact. Thus, the Court finds that Philip has failed to meet his burden to establish a reasonable basis to conclude that Clifford has committed a breach of trust. *See Covenant Trust Co.*, 45 So. 3d at 504.

The Court additionally finds good cause to deny Philip's Motion to Enjoin in its discretion, pursuant to Fla. Stat. § 736.0802(10)(e)(1). In order to properly adjudicate the Motion to Enjoin, the Court must consider the context in which Philip brings his Motion, and the context is this: both Abromats brothers ask the Court to determine that the other took advantage

of their elderly mother. Philip claims that Clifford secured Philip's expulsion from the Gloria Trust, and that as Trustee, he systematically stole Trust funds through unscrupulous means and undue influence. Clifford retorts that Philip convinced Ms. Abromats to reinstate him back into the Trust through undue influence. Merits aside, only Philip kept his actions entirely secret, informing Clifford of his reinsertion years later and shortly before Ms. Abromats's death. Timely disclosure of the September Amendments may have resulted in an unpleasant family dispute, but surely no more unpleasant than the instant litigation has been, and would have allowed Ms. Abromats to unambiguously express her intentions. Such a result would also have avoided the gross expenditure of Trust resources that have seemingly flowed from this litigation unabated. Faced with a record rife with cross-accusations, the Court believes it proper to err on the side of Florida's default trust law and the stated wishes of Ms. Abromats through the POA and Trust instrument, which grant Clifford "full power to act" for Ms. Abromats, and provided Clifford with broad powers, including the "specific power[ ] . . . [t]o employ and compensate attorneys." ECF No. [15-48] ¶ 1; Gloria Trust Art. 11 § F. If the Court is eventually required to decipher the intent of the late Ms. Abromats, it will only do so upon an adequate record. Accordingly, the Motion to Enjoin is denied. Clifford may continue to pay attorney's fees and costs from the assets of both Trusts, as appropriate.

IV.     CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Philip's Motion to Reinstate, **ECF No. [89]**, is **DENIED**;

2. Philip's Motion to Enjoin, **ECF No. [76]**, is **DENIED**;

3. The **parties and counsel** are **ORDERED** to appear before the Court for a hearing on **November 18, 2016 at 10:00 a.m.** At the hearing, the Court will

address Philip's Motion for Release of Funds, ECF No. [110], and will hold a status conference, discussing, among other things, the parties' appearance before the Honorable Alicia O. Valle for a settlement conference.

**DONE AND ORDERED** in Miami, Florida, this 13th day of October, 2016.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record